# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | 2:10-CR-0370-KJD-GWF |
| vs. | ) | **ORDER** |
| ALFRED SAPSE, | ) | |
| Defendant. | ) | |

This matter is before the Court on the United States' Motion for Leave to Take Foreign Deposition (#27), filed on March 15, 2011, Defendant's Response to Motion for Leave to Take Foreign Deposition (#23), filed on March 28, 2011, and Supplement to the United States' Motion for Leave to Take Foreign Deposition (#27), filed on April 15, 2011. The Court conducted hearings in this matter on March 31, 2011 and April 21, 2011.

The Government requests that the Court authorize it to take the deposition of the representative of the Filatov Institute in Odessa, Ukraine pursuant to Rule 15 of the Federal Rules of Criminal Procedure. The Government further requests that the deposition to be conducted by "two-way" video conferencing so that Defendant can observe the witness and be observed by the witness through the video link, rather than attending the deposition in person.

## BACKGROUND

The indictment in this case charges Defendant Alfred Sapse with mail fraud and wire fraud based on his alleged scheme to obtain money from patients and investors by falsely claiming to have developed a novel medical procedure involving "stem cells" that would cure or ameliorate severe, incurable diseases such as multiple sclerosis, cerebral palsy, and retinitis pigmentosa. Among the misrepresentations that Defendant Sapse allegedly made was that "he

studied at the Filatov Institute of Eye Diseases and Tissue Therapy, a prestigious ophthalmological and tissue therapy clinic located in Odessa, Ukraine, where he purportedly learned about and performed placental implants." *Indictment (#1)*, ¶ 9.A.  According to the Indictment, Defendant Sapse never studied at, attended or maintained any relationship with the Filatov Institute.  *Id.*

In order to prove this allegation, the Government sought the assistance of the Prosecutor General's Office of the Ukraine pursuant to the Treaty on Mutual Assistance in Criminal Matters between the United States and Ukraine ("MLAT").  The Ukrainian Prosecutor General's Office responded to the Government's request in a letter dated November 30, 2009 which stated that according to information provided by the Filatov Institute, "Mr. Alfred T. Sapse, born on March 06, 1926, neither studied at the aforementioned medical institution, nor passed any training programs, nor participated in the Institute's activities, nor maintained any relations with this institution, nor visited it for any other reason during the period from 1948 to 1958."  *Motion (#21), Exhibit A*.  The Government subsequently inquired whether a representative of the Filatov Institute would be willing to come to the United States and testify at trial regarding to the foregoing information.  In response to this request, the Prosecutor General's Office advised the Government that "K. Porshnev, the head of the Staff Department of the Filatov Institute stated that the Institute has no records in its archive showing the "admission, attendance and participation of Alfred T. Sapse in any scientific researches."  Mr. Porshnev informed the Prosecutor General, however, that he is not willing to travel to the United States to testify at trial, but is willing appear for a deposition in Odessa or possibly elsewhere in the Ukraine.  *Motion (#21), Exhibit D*.

Following the March 31st hearing in this matter, the Government made further inquiries to the Ukrainian legal authorities and confirmed that Mr. Porshnev will testify under oath and the deposition will be conducted in a manner consistent with American trial procedures.  The Government also asserts that pursuant to the American-Ukrainian MLAT, a person who gives false testimony pursuant to a request under the MLAT is subjected to prosecution in the requested state in accordance with the criminal laws of that state.

studied at the Filatov Institute of Eye Diseases and Tissue Therapy, a prestigious ophthalmological and tissue therapy clinic located in Odessa, Ukraine, where he purportedly learned about and performed placental implants." *Indictment (#1)*, ¶ 9.A.  According to the Indictment, Defendant Sapse never studied at, attended or maintained any relationship with the Filatov Institute.  *Id.*

In order to prove this allegation, the Government sought the assistance of the Prosecutor General's Office of the Ukraine pursuant to the Treaty on Mutual Assistance in Criminal Matters between the United States and Ukraine ("MLAT").  The Ukrainian Prosecutor General's Office responded to the Government's request in a letter dated November 30, 2009 which stated that according to information provided by the Filatov Institute, "Mr. Alfred T. Sapse, born on March 06, 1926, neither studied at the aforementioned medical institution, nor passed any training programs, nor participated in the Institute's activities, nor maintained any relations with this institution, nor visited it for any other reason during the period from 1948 to 1958."  *Motion (#21), Exhibit A*.  The Government subsequently inquired whether a representative of the Filatov Institute would be willing to come to the United States and testify at trial regarding to the foregoing information.  In response to this request, the Prosecutor General's Office advised the Government that "K. Porshnev, the head of the Staff Department of the Filatov Institute stated that the Institute has no records in its archive showing the "admission, attendance and participation of Alfred T. Sapse in any scientific researches."  Mr. Porshnev informed the Prosecutor General, however, that he is not willing to travel to the United States to testify at trial, but is willing appear for a deposition in Odessa or possibly elsewhere in the Ukraine.  *Motion (#21), Exhibit D*.

Following the March 31st hearing in this matter, the Government made further inquiries to the Ukrainian legal authorities and confirmed that Mr. Porshnev will testify under oath and the deposition will be conducted in a manner consistent with American trial procedures.  The Government also asserts that pursuant to the American-Ukrainian MLAT, a person who gives false testimony pursuant to a request under the MLAT is subjected to prosecution in the requested state in accordance with the criminal laws of that state.

*Government's Supplement (#27), page 2, Exhibit C, MLAT, Art.8, Par.1.* The Government further advises that the deposition can probably be conducted through a "two-way" video-conference between Kiev, Ukraine and Las Vegas, Nevada so that Defendant and the witness can observe each other during the deposition. Defendant, however, declines to stipulate to a deposition at which he will not be physically present in the same room as the witness.

Mr. Sapse is eighty five years old and is reportedly in good health. He is a native of Romania, but is a United States citizen and has a U.S. passport which he surrendered to Pretrial Services as a condition of his pretrial release. *See Order Setting Conditions of Release (#10).* The Government alleges that Mr. Sapse has conducted significant business in Romania, including an extension of his "stem cell" scheme. *Government's Supplement (#27), page 4.* The Government also stated in its Motion that it understands that Romanian authorities previously investigated Mr. Sapse for conduct similar to that alleged in the Indictment and that he might be subject to arrest or prosecution in Romania. *Motion (#21), page 9 n. 8.* According to the Government's Supplement, however, there apparently is no international warrant for Mr. Sapse's arrest. The Government has also confirmed that a United States citizen with a valid passport is not required to obtain a visa to enter the Ukraine and may remain in the Ukraine for up to 90 days. In the absence of an international warrant for Defendant's arrest, it is unlikely that he would be barred from entering the Ukraine, although it is possible that the Ukrainian authorities might not permit him to enter.

The Government is opposed to permitting Defendant to travel to the Ukraine for the deposition because there is no extradition treaty between the United States and the Ukraine and Mr. Sapse might be able to seek asylum in the Ukraine if he is permitted to enter that country. The Government asserts that Mr. Sapse is facing "a meaningful prison sentence if convicted" and he has a strong incentive not to return to the United States for trial. For this reason, the Government states that it will oppose a modification of Mr. Sapse's pretrial release conditions necessary to permit him to travel to the Ukraine for the deposition.

. . .

. . .

# DISCUSSION

Rule 15(a) of the Federal Rules of Criminal Procedure states that a party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice. Rule 15(c) states that a defendant who is not in custody has the right upon request to be present at the deposition subject to any conditions imposed by the court. Rule 15(d) further provides that if the deposition is requested by the government and the defendant is unable to bear the deposition expenses, the court must order the government to pay any reasonable travel and subsistence expenses for the defendant and his counsel to attend the deposition, and the costs of the deposition transcript.

The Ninth Circuit has stated that the district court has broad discretion under the exceptional circumstances standard in deciding whether to order depositions in a criminal case. *United States v. Olafson*, 213 F.3d 435, 442 (9th Cir. 2000). The facts of each case must be separately considered to determine whether exceptional circumstances exist. The court must consider, among other factors, whether the deponent will be available at the proposed location for deposition and will be willing to testify. Rule 15(a) does not require a conclusive showing of "unavailability" or "material testimony" before a deposition can be taken. It only requires that the trial court find that due to exceptional circumstances it is in the interest of justice that the testimony of a prospective witness be taken and preserved for possible use at trial. *United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998). *Compare, United States v. Zuno-Arce*, 44 F.3d 1420,1425 (9th Cir. 1995) (affirming trial court's denial of defendant's motion to take depositions because it was highly unlikely that the witnesses would appear for depositions and their testimony was "peripheral to the main issues" of the case).

There is no dispute that evidence as to whether or not Mr. Sapse attended, received training or participated in scientific activities at the Filatov Institute is relevant and material to the charges in the Indictment. The Government inquired whether the witness, Mr. Porshnev, is willing to come to the United States to testify at trial and he declined to do so. Mr. Porshnev is willing, however, to appear for a deposition in the Ukraine and his testimony will

be taken under oath and in accordance with American trial procedures.  Defendant argues that the Court should not authorize the deposition because there is no extradition treaty between the United States and the Ukraine and, therefore, the witness would not be subject to prosecution  for perjury in the United States.  Defendant also suggests that it is questionable whether the Ukrainian authorities would prosecute the witness for false testimony.  While the Court does not minimize the importance of an enforceable oath, *See Maryland v. Craig*, 497 U.S. 836, 845-846, 110 S.Ct. 3157, 3163 (1990), the risk of false testimony does not justify prohibiting the *taking* of the deposition so long as the witness takes an oath to tell the truth and is informed of the potential penalty for false testimony pursuant to the MLAT and Ukrainian law.  The Government has therefore made an adequate showing that exceptional circumstances exist to justify an order authorizing the deposition pursuant to Rule 15(a).

      The principal issue is whether Defendant is entitled to attend the deposition in person or whether it is appropriate to conduct the deposition by video-conferencing with the Defendant participating in the deposition through that remote means.  This issue involves not only Defendant's right pursuant Rule 15(c) to attend the deposition, but also implicates his Sixth Amendment right "to be confronted with the witnesses against him."

      "[T]he Confrontation Clause guarantees the defendant a face-to-face meeting with the witnesses appearing before the trier of fact." *Maryland v. Craig*, 497 U.S. at 844, 110 S.Ct. at 3162.  The right guaranteed by the Confrontation Clause includes not only a personal examination, but also (1) insures that the witness will give his statements under oath–thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, and (3) permits the jury to observe the witnesses' demeanor in assessing his credibility.  Face-to-face confrontation also enhances the accuracy of fact finding and reduces the risk that a witness will wrongfully implicate an innocent person based on the notion that it is more difficult to tell a lie about a person to his face than behind his back.  Although face-to-face confrontation is at the core of the values furthered by the Confrontation Clause, it is not the *sine qua non* of the right.  The Confrontation Clause is generally satisfied when the defense is

afforded the full right to cross-examine the witness. While not absolute, the right to face-to-face confrontation may not be easily dispensed with. *Craig* states that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Craig*, 497 U.S. at 850, 110 S.Ct. at 3166.

In *Craig* the trial court, pursuant to a state statute, permitted children who were alleged victims of sexual abuse to testify at trial by close circuit television so that they would not see the defendant. The Court held that the state's interest in protecting the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh a defendant's right to face his accusers in court so long as the trial court makes a case-specific finding of necessity.

In *United States v. Medjuck*, 156 F.3d 916, 920 (9th Cir. 1998), the Ninth Circuit held that "Rule 15 is not violated by the admission of videotaped testimony so long as the government makes reasonable efforts to secure the defendant's physical presence at the deposition and, failing this, employs procedures that are adequate to allow the defendant to take an active role in the deposition proceedings." The court cited *United States v. Gifford*, 892 F.2d 63, 65 (3rd Cir. 1989) and *United States v. Salim*, 855 F.2d 944, 950 (2nd Cir. 1988) in support of this statement. *Medjuk* also held that the defendant's Sixth Amendment right to confront the witnesses against him through a face-to-face meeting was not violated. In so holding, the court stated that an exception has been recognized for the admission of deposition testimony where the witness is unavailable to testify at trial. The deposition must be taken in compliance with law and the defendant must have the opportunity to cross-examine the deposed witness. *Medjuk* at 920, citing *United States v. Kelly*, 892 F.2d 255, 261 (3rd Cir. 1989).

In *Medjuck*, the government was unable to secure defendants' presence at the deposition of a witness in Canada because there was no mechanism in place to allow United States officials to transfer defendant over to Canadian authorities and secure his return to the

United States in a timely fashion after the deposition. In upholding the admission of the deposition testimony, the court stated:

> Before the Confrontation Clause's preference for face-to-face confrontation may be avoided by resort to telephonic participation, the Government must *first* attempt to secure the defendant's actual, physical presence at the deposition. *Christian v. Rhode*, 41 F.3d 461 467 & n.8 (9th Cir. 1994). . . .
>
> We conclude that the Government satisfied *Christian's* requirement that it attempt to secure the defendant's actual presence, by virtue of its demonstration of the impossibility of obtaining Medjuck's physical presence on terms acceptable to the Government. There is no requirement that the Government go through a futile exercise before it may proceed to arrange for a defendant's remote participation.

*Medjuck*, 156 F.3d at 920.

Other Courts of Appeal have upheld the taking of depositions of witnesses in foreign countries with the defendant participating by video-conferencing or telephonic means from the United States. *United States v. McKeeve*, 131 F.3d 1 (1st Cir. 1997), *United States v. Gifford*, 892 F.2d 263 (3rd Cir. 1990), and *United States v. Salim*, 855 F.2d 944 (2nd Cir. 1988). In these cases, the government was also unable to secure defendants' attendance at the depositions either because the foreign state would not agree to maintain the defendants in custody while present in their territory or would not permit the defendants to enter the country.

The First Circuit in *McKeeve* stated that "the shrinking size of the globe means that certain criminal activities increasingly manifest an international cachet and, because federal courts frequently lack the power to compel a foreign national's attendance at trial, Rule 15 may offer the only practical means of procuring critical evidence." 131 F.3d at 8. The court reiterated that a defendant can only be deprived of his right to be present at the deposition where the government has made diligent, albeit unsuccessful, efforts to secure his presence. The court stated that "although such efforts must be undertaken in good faith, they need not be heroic, and the possibility of using a deposition does not evaporate even if those efforts prove fruitless. In that event the district court must determine, on a case-specific basis, whether reasonable alternative measures can preserve adequately the values that underpin defendant's confrontation rights." 131 F.3d at 8-9.

In *United States v. Yates*, 438 F.3d 1307, 1316-17 (11th Cir. 2006) (en banc), the Eleventh Circuit stated that *Craig's* requirement that the government demonstrate that the furtherance of an important public policy makes it necessary to deny the defendant's right to a face-to-face confrontation requires something more than the mere unavailability of the foreign witness to testify at trial. The court held that it was improper for the trial court to permit the government to present the testimony of two Australian witnesses at trial by live video feed. The court noted that the government did not make a timely motion to depose the witnesses pursuant to Rule 15 and consequently no effort was made to secure the defendant's attendance at depositions in Australia.

In *United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008), the Fourth Circuit affirmed the admission of deposition testimony by Saudi police officers to rebut the defendant's assertion that his confession to terrorist crimes was extracted by torture. The Saudi Arabian government refused to permit the police officers to travel to the United States to testify at trial, but did permit them to be deposed in Saudi Arabia. The district court found that it was impractical for defendant to travel to the Saudi Arabia because it would have been difficult for the United States Marshals to maintain custody of the defendant while in Saudi Arabia and because he might be subject to prosecution in Saudi Arabia, complicating, if not precluding, his return to the United States to face trial. *Id.* 528 F.3d at 239. The deposition was conducted by two-way live video feed which permitted the defendant and the witnesses to observe each other during the deposition. While not necessarily endorsing the holding in *Yates*, the Fourth Circuit held that the government's interest in protecting the nation against international terrorism is a compelling interest which outweighed the defendant's right of face-to-face confrontation. The court also held that defendant's confrontation rights were adequately protected by the manner in which the deposition was conducted.

With the arguable exception of *Yates*, the foregoing cases indicate that the government's interest in ensuring that defendant will be present *at trial* is an important public policy which may be sufficient to override the defendant's right to face-to-face confrontation. The practical inability to maintain custody over a detained defendant while on foreign soil is a

sufficient excuse for not securing his presence at the deposition. Likewise, if there is a substantial risk that an out-of-custody defendant will not return for trial if he permitted to leave the United States, then the use of alternative means, such as two-way video conferencing, may justify the denial of defendant's right to a face-to-face meeting with the witness.[1]

Defendant's counsel requests a hearing regarding modification of Defendant's conditions of pretrial release to permit him to travel to the Ukraine to attend the deposition, including a recommendation by the supervising pretrial services officer concerning this request. The Government states that it will oppose a modification of Defendant's pretrial supervision because of its concern that he will not willingly return to the United States for trial. Because the Government has the obligation to use reasonable efforts to secure Defendant's presence at the deposition, the burden should be on it to establish that reasonable conditions cannot be imposed to secure Defendant's return if he is permitted to travel to the Ukraine for the deposition.

Title 18 of the United States Code Section 3142(c)(3) states that the judicial officer who imposed conditions of pretrial release may amend the order to impose additional or different conditions of release. Consistent with that provision, motions to modify conditions of release are generally heard by the judge who imposed the original conditions. In this case, Defendant's conditions of release were imposed by Magistrate Judge Johnston. If Magistrate Judge Johnston concludes that conditions can be fashioned to reasonable assure the Defendant's return and presence at trial, then he should be permitted to travel to the Ukraine to attend the deposition in person. If such conditions cannot be fashioned, then the deposition should be conducted by means of two-way video conferencing so that Defendant may observe

---

[1] Defendant has not indicated any willingness to submit to federal custody for purposes of being transported to and from the Ukraine for the deposition. If he were to do so, then it would be incumbent on the Government to make reasonable efforts to determine whether Defendant could remain in U.S. custody while in the Ukraine or whether Ukrainian law enforcement authorities would assume custody of the Defendant while in the Ukraine and return him to the custody of the United States at the conclusion of the deposition.

and be observed by the witness during the deposition.  Other arrangements should also be made to facilitate Defendant's communication with his counsel during the deposition.  Accordingly,

**IT IS HEREBY ORDERED** that the United States' Motion for Leave to Take Foreign Deposition (#21) is **granted** subject to the following conditions:

1. The witness shall take an appropriate oath or affirm to tell the truth subject to the penalty for false testimony pursuant to the MLAT and the provisions of Ukrainian criminal law.  The examination of the witness shall be conducted in accordance with trial procedures in the United States.  The deposition shall be reported by an official court reporter and shall also be videotaped.

2. If Defendant's conditions of pretrial release are modified to permit him to travel to Ukraine for the deposition, then the Government shall be required to pay the reasonable travel and subsistence costs for Defendant and his counsel to attend the deposition in person.  If the Defendant's conditions of release are not modified to permit him to attend the deposition in person, then the deposition shall be conducted by "two-way" video conferencing so that the witness and Defendant can observe each other during the deposition.  Arrangements must also be made to allow Defendant to confer with his counsel during the deposition.  The Government shall be required to pay the reasonable travel and subsistence costs for Defendant's counsel to attend the deposition in person.

DATED this 26th day of April, 2011.

_____
GEORGE FOLEY, JR.
U.S. MAGISTRATE JUDGE